IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MEGAN WALLETT,                                    CIVIL DIVISION

    Plaintiff,                                    Case No.

v.

E. B. ENDRES, INC.,

    Defendant.

**COMPLAINT AND JURY DEMAND**

A.    *Preliminary Statement*

1. The plaintiff Megan Wallett brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination based upon her gender. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.    *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about October 24, 2013, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 846-2013-51414. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated July 21, 2014.

5. This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. *<u>The parties</u>*

6. The plaintiff Megan Wallett is an adult individual who resides at No. 4 Automist Road, Middleburg, PA 17842, Snyder County. At all times relevant to this complaint, the plaintiff lived in Huntingdon, PA, Huntingdon County.

7. The defendant E.B. Endres, Inc., is an entity doing business in the Commonwealth of Pennsylvania. The defendant has a place of business located at 10630 Fairgrounds Road, Huntingdon, PA, 16652, Huntingdon County.

8. The defendant is in the business of custom millworking and cabinetry for commercial and residential customers.

9. The plaintiff was employed by the defendant in the position of office manager. The plaintiff's duties as office manager included: preparing payroll; retirement/401k contribution transmittals; sales and use tax entries and payments; controlled correspondence; monitoring clerical and human resource functions; accounts receivable; entering invoices; managed the overall office procedures and processes.

10. At all times material, the defendant employed more than fifteen employees.

11. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. *<u>Factual Background</u>*

12. The plaintiff was employed by the defendant from March 5, 2013 until September 10, 2013, at which time the defendant terminated her employment.

13. The plaintiff was paid on a salary basis and received benefits, including health insurance and vacation.

14. Throughout her employment, the plaintiff performed her job in a competent, professional and capable manner.

15. Prior to being hired, the plaintiff interviewed for the position with the president and owner of the company, Richard J. Endres, Jr. Endres specifically asked about the plaintiff's intentions about having a family and whether she wanted to have children. The plaintiff was surprised by that question, but told him that she did not envision starting a family any time soon.

16. After the plaintiff was hired, Endres was her direct supervisor.

17. Endres met with the plaintiff on or about June 5, 2013 for an informal review of the plaintiff's job performance to date. He told the plaintiff that he was pleased with the work that the plaintiff was doing and with her progress. He also told her that she would be in a position to take on additional job duties in the future.

18. In early July 2013, the plaintiff suspected that she was pregnant. She scheduled an appointment with her doctor and, on July 9, 2013, the plaintiff's physician confirmed that she was pregnant.

19. On August 8, 2013, approximately nine weeks into her pregnancy, the plaintiff told Endres that she was expecting a child. Endres congratulated her on the news, but was immediately concerned. He said, "oh geeze, what are your plans? What are you going to do? Are you going to be a stay at home mom?" The plaintiff told Endres that she planned to work until her due date and then she intended to return to work, full duty, as soon as practicable thereafter. Endres seemed unconvinced that she intended on returning back to work. He asked the plaintiff to keep him informed because "I know that women intend to return to work but it often doesn't happen after they have the baby." He said that they could discuss the issue in more detail later.

20.     In a brief discussion with Endres approximately 7 days later, he told the plaintiff that it was difficult for him to make future plans regarding the plaintiff's work duties and future plans with the company because of her pregnancy. He said that he was not sure how he was going to handle this situation.

21.     The plaintiff became concerned about her job security based upon Endres' reaction to her disclosure about her pregnancy. She decided to start exploring other job opportunities to protect herself in light of his hostility towards her being pregnant.

22.     On August 29, 2013, the plaintiff had a discussion with Endres about her job and that he was not giving her the job duties and responsibilities as they had discussed when she was hired and during her 90-day review. He said that her pregnancy made it difficult for him to trust her with more responsibility because her future at the company was "up in the air". Disappointed, the plaintiff told Endres that she was thinking of a applying for a business manager position at the Mount Union Area School District. She told him that the person currently in that position was going to resign. He actually encouraged her to apply for that job and said that such a move "would probably be best with your 'situation'". The plaintiff promised to keep him advised.

23.     On September 6, 2013, the plaintiff told Endres that the business manager at Mount Union Area School District decided not to resign and that the plaintiff was no longer pursuing that job opportunity. Endres was disappointed by this news and said that he still intended on replacing the plaintiff. The plaintiff asked why he was going to replace her since she had not taken another job. Endres said "we can talk about this later. I have to go now."

24.     On September 10, 2013, Endres called the plaintiff into his office and said that he could now have "our talk about your future here at Endres." He said that he was going to let her

go because "this is not going to work out." He told her that she was over-qualified for the job, something that he had never mentioned before. He then said that the plaintiff does a very good job "but I need someone here for the long-haul." He told the plaintiff that he is trying to plan his exit strategy to retire and that her future with the company was not certain. He also told her "I don't feel that you are the type of person who is going to be here into the future. I need someone who can be here and reliable if I need to take time off." Endres finished by advising the plaintiff that he had been interviewing other candidates and found "a good fit" that he had interviewed for a second time that afternoon. He advised that the termination was effective immediately.

25. The plaintiff was terminated because of her gender; specifically because she was pregnant. All other reasons proffered by Endres were nothing more than pretexts.

**FIRST CAUSE OF ACTION**

26. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

27. The plaintiff is female and thus is protected against discrimination on the basis of her gender under Title VII.

28. The plaintiff was qualified for her position.

29. Despite her qualifications, the plaintiff was terminated. The reasons given for her discharge were a pretext.

30. The defendant's discharge of the plaintiff was in violation of Title VII because it was based upon her gender, and, more specifically, because she was pregnant.

31. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of gender discrimination.

## SECOND CAUSE OF ACTION

32.     The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

33.     As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq*.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306

JOHNSON, BRUZZESE & TEMPLE
300 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated:  August 8, 2014